Approved: _____
EMIL J. BOVE III / ANDREA L. SURRATT
Assistant United States Attorneys

THEA D. R. KENDLER / DAVID RECKER
Trial Attorneys
Counterintelligence and Export Control Section
National Security Division, Department of Justice

Before:   HONORABLE BARBARA C. MOSES
          United States Magistrate Judge
          Southern District of New York                ORIGINAL

- - - - - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA              :   **SEALED COMPLAINT**
                                      :
        - v. -                        :   Violations of
                                      :   18 U.S.C. § 1001
KUN SHAN CHUN,                        :
    a/k/a "Joey Chun,"                :   COUNTY OF OFFENSE:
                                      :   NEW YORK
                Defendant.            :
- - - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

    JASON LEVITT, being duly sworn, deposes and says that he is a Special Agent at the Federal Bureau of Investigation ("FBI"), and charges as follows:

**COUNT ONE**

    1.  On or about February 27, 2012, in the Southern District of New York and elsewhere, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, in a matter within the jurisdiction of the executive branch of the Government of the United States, willfully and knowingly did falsify, conceal, and cover up by trick, scheme, and device a material fact, and did make materially false, fictitious, and fraudulent statements and representations, and did make and use false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries, to wit, CHUN responded falsely in a written questionnaire submitted to the FBI in connection with an investigation relating to his security clearance that he had not had "close and/or continuing contact with a foreign national within the last seven (7) years with

whom [CHUN] . . . [was] bound by affection, influence, common interests, and/or obligation."

(Title 18, United States Code, Section 1001.)

## COUNT TWO

2. On or about February 27, 2012, in the Southern District of New York and elsewhere, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, in a matter within the jurisdiction of the executive branch of the Government of the United States, willfully and knowingly did falsify, conceal, and cover up by trick, scheme, and device a material fact, and did make materially false, fictitious, and fraudulent statements and representations, and did make and use false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries, to wit, CHUN responded falsely in a written questionnaire submitted to the FBI in connection with an investigation relating to his security clearance that he had not "in the past seven (7) years provided advice or support to any individual associated with a foreign business or other foreign organization that [CHUN had] not previously listed as a former employer."

(Title 18, United States Code, Section 1001.)

## COUNT THREE

3. On or about February 27, 2012, in the Southern District of New York and elsewhere, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, in a matter within the jurisdiction of the executive branch of the Government of the United States, willfully and knowingly did falsify, conceal, and cover up by trick, scheme, and device a material fact, and did make materially false, fictitious, and fraudulent statements and representations, and did make and use false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries, to wit, CHUN responded falsely in a written questionnaire submitted to the FBI in connection with an investigation relating to his security clearance that he had not "in the past seven (7) years been involved in any . . . type of business venture with a foreign national."

(Title 18, United States Code, Section 1001.)

## COUNT FOUR

4. In or about July 2015, in the Southern District of New York and elsewhere, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, in a matter within the jurisdiction of the executive branch of the Government of the United States, willfully and knowingly did falsify, conceal, and cover up by trick, scheme, and device a material fact, and did make materially false, fictitious, and fraudulent statements and representations, and did make and use false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries, to wit, CHUN failed to disclose to the FBI that he had contact with one or more foreign nationals during a trip to Europe despite being under an obligation pursuant to FBI policy to make such a disclosure.

(Title 18, United States Code, Section 1001.)

The bases for my knowledge and the foregoing charges, are, in part, as follows:

5. I have been a Special Agent at the FBI since approximately 2010. Since 2011, I have been assigned to the Counterintelligence Division within the New York Field Office of the FBI. The focus of my counterintelligence efforts has been on investigating the foreign intelligence activities of the People's Republic of China.

6. I have learned the facts contained in this Complaint from, among other sources, my personal participation in this investigation, my discussions with other law enforcement agents, searches in which I have participated, surveillance in which I have participated, and my review of documents, electronic recordings, and other materials. Because this Complaint is being submitted for the limited purpose of establishing probable cause, it does not include every fact that I have learned during the course of this investigation. Further, any statements related herein are described in substance and in part only.

## BACKGROUND

7. KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, has been an employee of the FBI since approximately 1997. During the course of his employment, CHUN served as an electronics technician. As a result of that position, the FBI granted CHUN a Top Secret security clearance, and his duties

3

included accessing sensitive, and in some instance classified, information. Like all FBI employees in similar positions, CHUN was advised of FBI policy regarding reporting contacts with foreign nationals and agents of foreign powers. CHUN was warned by the FBI of the risk that foreign nationals and agents of foreign powers may seek to develop relationships with him in an effort to obtain the sensitive information to which he had access or to develop leverage that could be used to coerce CHUN to divulge such information.

8. However, since at least approximately 2006, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, and certain of his relatives maintained relationships with one or more Chinese nationals purporting to be affiliated with a company in China named Zhuhai Kolion Technology Company Ltd. ("Kolion"). Through those relationships, CHUN was asked to perform research and consulting tasks in the United States in exchange for financial benefits, including paid foreign travel. During this period, CHUN had contact with at least one individual whom CHUN understood to be affiliated with the Chinese government.

9. As recently as July 2015, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, met with one or more of his Chinese associates in Europe. During the same timeframe, CHUN informed an FBI Special Agent acting in an undercover capacity (the "UC") that he wanted to introduce the UC to one or more of his Chinese associates in an effort to develop a "consulting" relationship between himself, the UC, and his Chinese associates. CHUN also expressed a willingness to facilitate the passage of sensitive United States Government information from the UC to one or more of his Chinese associates, including individuals associated with the Chinese Government.

10. The investigation of these activities revealed that KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, made a series of false statements to the FBI regarding his contact with these Chinese nationals and Kolion as part of a long-standing and concerted effort to conceal these relationships.

11. In October 2015, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, told the UC during a recorded meeting, in substance and in part, that CHUN's failure as an FBI employee to report his foreign contacts was illegal because "[y]ou have to report," and acknowledged to the UC "I lied, I reported certain people [but] not everybody."

4

## THE DEFENDANT'S EMPLOYMENT AT THE FBI

12. KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, was born in Guangdong, China in approximately 1969. He entered the United States in approximately 1980, and became a naturalized citizen of the United States in approximately 1985.

13. KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, reported to the FBI that he met Joey Yan Yi Zhou in approximately August 2011, and that he married Zhou in late 2013.

14. Since approximately 1997, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, has worked at the FBI's New York Field Office as an electronics technician assigned to the Computerized Central Monitoring Facility of the FBI's Technical Branch. In connection with his employment, the FBI granted CHUN a Top Secret security clearance in approximately 1998.

15. Prior to taking an international trip, FBI employees are required to complete a form with information regarding planned foreign travel, including the purpose of the trip, the planned itinerary, anticipated travel companions, and anticipated contact with foreign nationals. FBI employees are also required to participate in debriefings regarding their foreign travel upon returning from an international trip, which can include a written questionnaire as well as an interview.

16. On approximately nine occasions between approximately 2000 and the present, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, reported to the FBI travel to the areas of Hong Kong and China.

17. During the same period, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, also reported to the FBI additional travel to Canada, Thailand, Europe, Australia, and New Zealand.

18. In connection with his international travel while employed at the FBI, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, was warned regarding the need to report contacts with foreign nationals and agents of foreign powers and the risks associated with his travel. For example, in November 2009, CHUN signed a document confirming that he had received a "Foreign Travel/Hit Briefing." The briefing document included the following warnings:

    a. "Foreign intelligence services are interested in you because you are an American, you are a U.S. Government employee, you work in the Intelligence Community, you have access to sensitive information & you work in Law Enforcement."

    b. "Typical approaches [by Foreign intelligence services] include:  Recruitment: The attempt to establish a clandestine relationship with a subject through his/her voluntary cooperation."

### THE DEFENDANT'S UNREPORTED AFFILIATION WITH KOLION

  19. According to a publicly available website, Kolion purports to be a China-based manufacturer of printer products with over 100 employees.

  20. Following a December 2005 trip to China by KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, CHUN sent an email on or about January 13, 2006, to an individual identified as "Mr. Su," whom I believe, based on my training, experience, and participation in this investigation, is a Chinese national associated with Kolion.  CHUN's email stated:  "Just want to take[] this opportunity to thank you for a very informative[] introduction to your company, and [I] have learned alot about your operation. I am very delighted that [I] met you and Mr. Chow. I hope we will continue to work together in the future. Below is my Skype User Name and emails.  Please relate this email to Simon Chow too."  In the email, CHUN provided a Skype account, three email addresses, a telephone number, and his physical address, and asked that they "start communicating soon through the internet."

  21. On or about November 27, 2007, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, sent an email to an individual who identified himself as "Simon."  Based on my training, experience, and participation in this investigation, I believe that "Simon" is the "Simon Chow" to whom CHUN referred in his January 13, 2006 email to "Mr. Su."  The email contained passport numbers associated with CHUN, his mother, and a third party.  On or about November 30, 2007, CHUN departed on a trip to Hong Kong and China, from which he returned on or about December 14, 2007.

22. On or about December 18, 2007, "Mr. Su" sent an email to KUN SHAN CHUN, a/k/a "Joey Chun," the defendant. The email stated that "Mr. Su" had learned a lot from their discussions and asked CHUN to review an attachment relating to a printer cartridge. CHUN forwarded the message to an individual believed to be one of CHUN's brothers ("Brother-1"). In a subsequent message sent on or about February 27, 2008, CHUN explained to Brother-1: "Actually those guys want[] us to help them out to buy the device do[] all the programming, and erase them entirely . . . . According to them, they will give us money for the time we spend[] on this research, and they will pay us back if they decided [to] let us . . . buy the[] equipment[]."

23. KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, received an email on May 20, 2009, addressed to shareholders of Kolion and signed by "Simon Zhou." Based on my training and experience, I believe that the name "Chow" is a Cantonese spelling for "Zhou," and therefore that "Simon Zhou" and "Simon Chow" are the same person.

24. On or about June 3, 2009, "Simon" sent an email to KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, regarding Kolion's five-year anniversary. CHUN responded: "me and my mom congratulate you and your company's successful[] years. . . . Hopefully in the future I will have time to visit you and your company." On or about November 9, 2009, CHUN sent "Simon" passport numbers for himself and other relatives. On or about December 6, 2009, CHUN departed on a trip to Hong Kong, China, and Thailand, from which he returned on or about December 24, 2009.

25. On or about January 7, 2010, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, exchanged messages with Brother-1. During the exchange, CHUN stated: "[I] need to get SSD [solid-state hard drive] for the people in China . . . they are paying . . . [I] want to order them and have Aunt Chun bring them back to them, because she is leaving on the 13 . . . . they want to wire money to me, but [I] told them [I] pay for it now, and just give money to father so he can bring it back."

26. On or about October 14, 2010, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, exchanged messages with Brother-1. During the exchange, CHUN stated: "[Y]ou know where I can go to find companies that do remanufacturing toner cartridges[?] . . . [T]he company in china needs that information quick[.]" After Brother-1 sent CHUN a link to a website, CHUN responded: "[I] need a lot more[.] [S]o I can

give them a report. . . . [I] think they need some market research so that if they get [sued] by [a] brand name company in the future, they can use these data to fight back."

27. On or about September 29, 2011, "Simon" sent an email to KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, which included information relating to hotels in France and Italy and stated "Five Star Hotel the entire way." On or about September 29, 2011, CHUN responded to the email by sending full names and passport numbers for himself and Zhou, his future wife. On or about September 30, 2011, CHUN forwarded some of the hotel information from "Simon" to Brother-1 and another relative with a message that stated: "It's a short notice, [I] got invited to a 10 day[] trip to Europe by the company in China. . . . Joey Zhou is travel[]ing with me, well her ticket has to pay for." On or about October 5, 2011, CHUN and Zhou departed on a trip to France and Italy, from which they returned on or about October 14, 2011.

28. On or about December 23, 2011, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, sent "Su Guolin" a series of photographs of CHUN and others that appear to have been taken in France and Italy.

### THE FBI'S 2012 SECURITY CLEARANCE REINVESTIGATION

29. In approximately 2012, the FBI conducted a regularly scheduled reinvestigation of KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, in order to determine whether he should continue to maintain a Top Secret security clearance.

30. In connection with the 2012 reinvestigation, on or about February 27, 2012, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, completed an "Electronic Questionnaire for Investigations Processing," which is also known as an "e-QIP." The e-QIP included the following warnings, among others:

    a. "All questions on this form must be answered completely and truthfully in order that the Government may make the determinations described below on a complete record. Penalties for inaccurate or false statements are discussed below."

b. "This form will be used by the United States (U.S.) Government in conducting background investigations, reinvestigations, and continuous evaluations of persons under consideration for, or retention of, national security positions . . . ."

c. In a section entitled "Penalties for Inaccurate or False Statements," the e-QIP stated: "The U.S. Criminal Code (title 18, section 1001) provides that knowingly falsifying or concealing a material fact is a felony which may result in fines and/or up to five (5) years imprisonment."

31. In a section of the e-QIP entitled "Statement of Understanding," KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, responded "Yes" to the statement: "I have read the instructions and I understand that if I withhold, misrepresent, or falsify information on this form, I am subject to the penalties for inaccurate or false statement[s] (per U.S. Criminal Code, Title 18, section 1001) . . . ."

32. In a section of the e-QIP entitled "Foreign Contacts," KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, responded "No" to the following question:

a. "Do you have, or have you had, close and/or continuing contact with a foreign national within the last seven (7) years with whom you, or your spouse, or cohabitant are bound by affection, influence, common interests, and/or obligation?"[1]

33. In a section of the e-QIP entitled "Foreign Business, Professional Activities, and Foreign Government Contacts," KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, responded "No" to the following questions:

a. "Have you in the past seven (7) years provided advice or support to any individual associated with a foreign business or other foreign organization that you have not previously listed as a former employer?"

b. "Have you in the past seven (7) years been involved in any other type of business venture with a foreign national not described above (own, co-own, serve as a business consultant, provide financial support, etc.)?"

---

[1] The e-QIP defined the term "foreign national" as "any person who is not a citizen or national of the U.S."

9

### THE DEFENDANT'S JULY 2015 TRIP TO EUROPE
### TO WITH MEET CHINESE NATIONALS

34.     On or about April 25, 2015, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, submitted to the FBI a "Report of Foreign Travel" disclosing a planned travel itinerary departing July 1, 2015, to Germany, the Czech Republic, Austria, Hungary, and France. With respect to each of the five legs of the trip, CHUN responded "No" to the question, "Anticipate Reportable Foreign Contact? If 'Yes' attach a completed Report of Foreign Contact form (FD-981)."

35.     On or about July 1, 2015, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, traveled from the United States to Germany. CHUN returned to the United States, from France, on or about July 14, 2015.

36.     On or about July 17, 2015, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, submitted to the FBI a "Foreign Travel Debriefing" form. CHUN did not disclose in this "Foreign Travel Debriefing" form his contact with foreign nationals during his July 2015 trip to Europe, and CHUN did not file a "Report of Foreign Contact" form with respect to this Europe trip.

37.      On or about July 29, 2015, Zhou uploaded a series of photographs to an Apple iCloud account that appear to have been taken in Europe during the trip that CHUN and Zhou took in July 2015. Certain of the photographs depict CHUN together with, among others, a male who is also depicted in the photographs described above in paragraph 28, which appear to have been taken in France and Italy in October 2011.

### THE DEFENDANT'S ADMISSIONS TO THE UC

38.     In or about February 2015, the FBI caused the UC to be introduced to KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, in connection with the investigation. The UC purported to be a U.S. citizen born in China who was working as a consultant to several firms, including an independent contractor that works for, among other entities, the Department of Defense.

10

39. In or about March 2015, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, met with the UC in the vicinity of New York City. The meeting was recorded.[2] During the meeting:

    a. CHUN explained that an associate from Zhuhai, China, had introduced CHUN to another man in Guangzhou, China who owned a company---subsequently identified by CHUN as Kolion---that sold parts for computer printers. CHUN's associates in China had asked CHUN to "consult" by providing "ideas" relating to "technology," and to ship materials from the United States to them in China. Later in the meeting, CHUN indicated that his Chinese associates "deal with the [Chinese] government" and "probably have some government people."

    b. CHUN stated, in sum and substance, that his associates in China sometimes paid for prostitutes for him when they met, that his mother owned stock in Kolion, and that his parents had received money from his Chinese associates.

40. In or about March 2015, approximately one week after the meeting described above, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, met with the UC in the vicinity of New York City. The meeting was recorded. During the meeting:

    a. CHUN explained that Kolion had "government backing," and that approximately five years prior his mother met a "section chief" whom CHUN believed is associated with the Chinese government. With respect to the "section chief," CHUN stated: "I know this government guy," but that he did not "want to get involved because once I get involved then I have to disclose that . . . ."

    b. CHUN said that his parents had "invested" in Kolion approximately 10 years ago and also purchased property in China.

---

[2] The information set forth herein relating to meetings and communications between KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, and the UC is based on conversations with the UC, recordings of the meetings that were obtained by the UC, which were conducted predominantly in English, and draft summary transcriptions and translations of the meetings to the extent available.

    c. CHUN's parents had urged him to work for or with his Chinese associates because of their investment in Kolion.  CHUN believed his parents had informed CHUN's Chinese associates that CHUN worked "at the U.S. Government," and that they typically notify CHUN's Chinese associates before CHUN travels to China.

    d. CHUN stated that, when he visits his Chinese associates they "give me a place to live and give me a hotel."

    e. "[E]very time" CHUN travels to China, his Chinese associates ask him, "'what do you have for us . . . what do you have?,'" and if CHUN did not have anything his Chinese associates acted "kind of like pissed off" because "[t]hey want you to have everything."

    f. CHUN explained:  "My company [i.e., Kolion] always . . . wants me, like, . . . 'hey, why don't you talk to them, talk to the government officials?'  I say 'no I can't do that because . . . . then I have to disclose that . . .'"

    41. In or about April 2015, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, traveled with the UC to a casino in Connecticut.  Many of the conversations between CHUN and the UC during the trip were recorded.  During the trip:

    a. CHUN said that his Chinese associates "like to travel once a year . . . [a]nd they usually . . . ask me, 'where do you wanna go?'"  CHUN stated that he did not select the location of the meetings, but that he had "suggest[ed] ideas" that his Chinese associates had adopted.

    b. CHUN communicated with his Chinese associates via an application called "WeChat" and tried to avoid using the phone "[i]f it's anything important" because "[w]ho knows who's listening on the other end."

    c. CHUN said that he planned to travel to Europe in or about June 2015 to meet with one or more of his Chinese associates.  CHUN told the UC that the Chinese associates would pay half of the expenses associated with CHUN's trip, and offered to introduce the UC to his Chinese associates if the UC could meet with them during the trip in Europe.

12

42. In or about June 2015, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, met the UC in the vicinity of New York City. The meeting was recorded. During the meeting:

    a. CHUN agreed to introduce the UC to some of his associates from China at a meeting in Budapest, Hungary.

    b. CHUN said he had already informed his Chinese associates that the UC was a consultant who may be in a position to assist them.

    c. CHUN told the UC that he wished to act as a "sub-consultant" to the UC and wanted the UC to "pay" him "a little bit."

    d. CHUN stated that on at least one prior occasion his associates from China had paid him "a couple thousand" dollars.

43. In or about July 2015, the UC traveled to Hungary and met with KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, on at least two occasions. The UC did not record meetings while in Hungary.

    a. During the first meeting, CHUN told the UC that only one of his Chinese associates had traveled to Hungary, and the "government guy" had not come on the trip. CHUN told the UC that his Chinese associate would not be able to meet with the UC because he was too busy, but that he had given CHUN 500 Euros to entertain the UC as an apology.[3] CHUN also told the UC that his Chinese associate had partially paid for the travel of CHUN and his wife.

    b. During the second meeting, which occurred on the following day, CHUN stated that he knew "firsthand" that the Chinese government was actively recruiting individuals who could provide assistance, and that the Chinese government was willing to provide immigration benefits and other compensation in exchange for such assistance. The UC told CHUN that he had access to sensitive United States Government information. CHUN responded that his Chinese associates would be interested in that type of information, but that CHUN would have to travel to China to arrange a deal to provide the information to them.

---

[3] CHUN and the UC ate a meal together during the first meeting in Hungary. The UC declined CHUN's offer to pay for the meal.

CHUN said that he expected a "cut" of any payment that the UC received for providing information to the Chinese government.

44. In or about August 2015, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, met the UC in the vicinity of New York City. The meeting was recorded. During the meeting:

   a. The UC discussed with CHUN the sensitive information to which the UC purported to have access. CHUN told the UC: "I could get you connected and then I'm going to stay off. You know, you do your thing, you make your money, I don't really care, but . . . If you make any money, just give me a little bit . . . ."

   b. CHUN agreed to meet with the UC in the future in order to review the sensitive information so that CHUN could describe it to his Chinese associates.

   c. CHUN explained: "I'm already in deep shit you know 'cause . . . people that I met you know in China over there I never disclose that, never. That's a fuckin' violation right then and there you know?"

45. On or about August 29, 2015, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, participated in a call with the UC. The call was recorded. During the call, CHUN was reluctant to talk about details over the telephone, but informed the UC, in sum and substance, that he had caused an email to be sent to one of his Chinese associates in an effort to initiate a negotiation about selling to them the sensitive information from the UC.

46. In or about October 2015, KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, met the UC in the vicinity of New York City. The meeting was recorded. During the meeting:

   a. CHUN explained that he had attempted unsuccessfully to make contact with a Chinese government official in order to facilitate the passage of sensitive information from the UC.

   b. CHUN told the UC: "I really don't care about if . . . they [i.e., the FBI] fire me but what if they have evidence of you hanging out with . . . foreign contact and you're not reporting?" CHUN then told the UC that such a failure to report was illegal and reiterated, "Yeah it is. For us [FBI employees] it is. You have to report."

14

          c.    CHUN stated:  "I lied, I reported certain people [but] not everybody."

WHEREFORE, the deponent respectfully requests that a warrant be issued and that KUN SHAN CHUN, a/k/a "Joey Chun," the defendant, be arrested and imprisoned, or bailed, as the case may be.

JASON LEVITT  
Special Agent, FBI

Sworn to before me this  
14th Day of March, 2016

HONORABLE BARBARA C. MOSES  
United States Magistrate Judge  
Southern District of New York

15